UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| KENNETH GUNTHER,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>NORTH COAST COOPERATIVE, INC.,<br><br>　　　　　　Defendant. | Case No.  20-cv-02325-RMI<br><br>**ORDER ON MOTION TO REMAND**<br>Re: Dkt. Nos. 7, 10 |

Plaintiff filed suit in Humboldt County Superior Court against his former employer, North Coast Cooperative, Inc. ("Defendant"), alleging ten causes of action – nine claims based on California Labor Code Provisions and one claim based on California's unfair business practices provision. *See* Notice of Removal Ex. A (dkt. 1) at 14-43. Defendant removed the case invoking this court's federal question jurisdiction asserting that Section 301 of the Labor Relations Management Act ("LMRA"), 29 U.S.C. § 185, preempted the state law claims. Plaintiff moved to remand (dkt. 7), and Defendant filed a response in opposition (dkt. 10).

**BACKGROUND**

On February 25, 2020, Plaintiff filed a class action complaint in Humboldt Superior Court. *See* Notice of Removal Ex. A (dkt. 1) at 14-43. Plaintiff's claims are as follows: 1) unpaid overtime in violation of Cal. Lab. Code §§ 510 and 1198; 2) unpaid meal period premiums in violation of Cal. Lab. Code §§ 226.7 and 512(a); 3) unpaid rest period premiums in violation of Cal. Lab. Code § 226.7; 4) unpaid minimum wages in violation of Cal. Lab. Code §§§ 1194, 1997, 1197.1; 5) final wages not timely paid in violation of Cal. Lab. Code §§ 201 and 202; 6) wages not timely paid during employment in violation of Cal. Lab. Code § 204; 7) non-compliant wage

statements in violation of Cal. Lab. Code § 226(a); 8) failure to keep requisite payroll records in violation of Cal. Lab. Code § 1174(d); 9) unreimbursed business expenses in violation of Cal. Lab. Code §§ 2800 and 2802; and 10) unfair business practices in violation of Cal. Bus. & Prof. Code § 17200. *Id*. at 14-41. The Complaint did not assert any claim under federal law, and it did not raise or refer to the collective bargaining agreement ("CBA"). *See generally id*. Plaintiff alleges he was a hourly-paid, non-exempt employee for Defendant from October of 2017 to August of 2019 in Humboldt County, California. *Id*. at 20. The gist of Plaintiff's allegations is that Defendant had a pattern or practice of failing to compensate Plaintiff, and other similarly situated employees, for regular and overtime hours worked and for missed meal periods and rest breaks. *Id*. at 21-22. Other violations of the California Labor Code flowed from these violations, such as failure to provide accurate wage statements and keep accurate payroll records. *Id*. at 22-24.

      During Plaintiff's employment, a CBA was in place between Defendant and United Food and Commercial Workers Union, Local 5 ("the Union"). *See* Farrer Decl. Ex. 1 (dkt.1-1) at 5-44. Specifically, the CBA was effective from November 2, 2016, to September 28, 2019. *Id*. at 5. The relevant provisions are Articles 2, 6, 7, 12, and Appendix A. Article 2 provided that "[o]n or after thirty (30) days of employment, or the date of the execution of this Agreement, whichever is later, each full and part-time employee shall become and remain a member of the Union in good standing as a condition of employment . . . ." *Id*. at 10. The CBA applied to all new employees, as well as established employees, "whether such person is or is not a member of the Union, e.g., probationary employees." *Id*. at 12. Article 6 provided for the hours of work, workweek, and breaks. *Id*. at 19-20. This article states that a normal workday consisted of up to eight hours and a normal workweek consisted of up to forty hours in a seven-day period. *Id*. at 19. As for meal periods, the article provided that employees "working more than five hours will be allowed a thirty minute unpaid meal period, except that when a work period of not more than six hours will complete the day's work, then the meal period may be waived . . . ." *Id*. at 20. Employees were allowed fifteen-minute, paid rest breaks for each four hours worked. *Id*. The timing of meal periods and rest breaks were to be "determined by the employee's immediate supervisor in compliance with California law." *Id*.

2

1  Article 7 of the CBA governed wage rates. *Id*. The wage rates for various job classifications were set forth in Appendix A. *Id*. Overtime pay was set to be paid according to current or future state and federal law. *Id*. at 21. The CBA stated the current law provided for one and one-half times the regular rate of pay for all hours worked over eight hours per day and for all hours worked in excess of forty hours in one workweek and twice the regular rate of pay for hours worked beyond twelve hours in one work day or hours worked in excess of eight hours on any seventh day of work in one week. *Id*. Article 12 provided a four-step process for addressing employer and employee grievances, the final step being arbitration. *Id*. at 28-29.

The Complaint identifies a class and a subclass. The putative class is defined as "[a]ll current and former hourly-paid or non-exempt employees" who reside in California and who worked for Defendant in the State of California in the four years preceding the filing of the Complaint up until the final judgment. *See* Notice of Removal Ex. A (dkt. 1) at 17. The subclass adds employees who earned shift differential pay, non-discretionary bonuses, and non-discretionary performance pay separate from their regular rate of pay such that those added compensation features were not included in the calculation of their overtime pay rate. *Id*.

## LEGAL STANDARD

Pursuant to 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant" to the appropriate district court. "Original jurisdiction" can be based either on the existence of a federal question (28 U.S.C. § 1331) or on diversity of citizenship when the suit is between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs (28 U.S.C. § 1332). "It is to be presumed that a cause lies outside [the] limited jurisdiction [of the federal courts] and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Abrego Abrego v. Dow Chem. Co.,* 443 F.3d 676, 684 (9th Cir. 2006) (internal quotation marks omitted). "The 'strong presumption against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper,' and that the court resolves all ambiguity in favor of remand to state court." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009) (quoting *Gaus v. Miles, Inc.,* 980 F.2d 564, 566 (9th Cir.1992) (per curiam)).

"[T]he defendant bears the burden of establishing jurisdiction by a preponderance of the evidence." *Huffman v. Pac. Gateway Concessions LLC*, No. 19-cv-01791-PJH, 2019 WL 2563133, at *2 (N.D. Cal. June 21, 2019) (citing *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 88 (2014)).

In order to establish removal jurisdiction under 28 U.S.C. § 1331, a federal question must exist on the face of the complaint. *Wayne v. DHL Worldwide Express*, 294 F.3d 1179, 1183 (9th Cir. 2002) ("'[F]ederal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint.'") (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987)). Generally, federal preemption is an affirmative defense not giving rise to removal. *Caterpillar*, 482 U.S. at 393. However, there is "a corollary to the well-pleaded complaint rule, known as the 'complete preemption' doctrine. The Supreme Court has concluded that the preemptive force of some statutes is so strong that they 'completely preempt' an area of state law." *Balcorta v. Twentieth Century-Fox Film Corp.*, 208 F.3d 1102, 1106-07 (9th Cir. 2000) (citing *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 65 (1987)). "In such instances, any claim purportedly based on that preempted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Id.* (citing *Franchise Tax Bd. v. Constr. Laborers Vacation Trust,* 463 U.S. 1, 24 (1983)).

## DISCUSSION

Section 301(a) of the LMRA gives federal courts exclusive jurisdiction to hear "[s]uits for violation of contracts between an employer and a labor organization." 29 U.S.C. § 185(a). Although Section 301 does not expressly provide for preemption, the Supreme Court has consistently held that the LMRA authorizes federal courts to create a uniform body of law regarding disputes arising from labor contracts. *See Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 210 (1985); *Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 103-04 (1962). "What matters in a preemption analysis is not the nomenclature; what matters is '[t]he purpose of Congress,' which is 'the ultimate touchstone.'" *Alaska Airlines Inc. v. Schurke*, 898 F.3d 904, 926 (9th Cir. 2018), *cert. denied*, 139 S. Ct. 1445 (2019) (quoting *Lueck*, 471 U.S. at 208). The purpose of Section 301 is to "protect the role of grievance and arbitration and of federal labor law in resolving CBA

4

disputes, not to alter or displace state law labor rights." *Id*. (citing *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 256 (1994); *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 408-09 (1988)). Thus, while preemption is typically a defense not sufficient to authorize removal, "[Section] 301 has such 'extraordinary preemptive power' that it 'converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Curtis v. Irwin Indus., Inc.*, 913 F.3d 1146, 1151-52 (9th Cir. 2019) (quoting *Metro. Life Ins. v. Taylor*, 481 U.S. 58, 65 (1987)).

Despite this great deference to the arbitration process, Section 301 "cannot be read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law." *Livadas v. Bradshaw*, 512 U.S. 107, 123 (1994). "'Setting minimum wages, regulating work hours and pay periods, requiring paid and unpaid leave, protecting worker safety, prohibiting discrimination in employment, and establishing other worker rights remains well within the traditional police power of the states,' and claims alleging violations of such protections will not necessarily be preempted, even when the plaintiff is covered by a CBA." *Curtis*, 913 F.3d at 1152 (quoting *Schurke*, 898 F.3d at 919-20).

The Ninth Circuit has articulated a two-part test to determine whether Section 301 preemption applies to claims asserted by a plaintiff who is covered by a CBA – commonly referred to as the *Burnside* test. See *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053 (9th Cir. 2007). First, the court must ask whether the plaintiff's claims rest on a right that exists solely because of a CBA. *Id*. at 1059-60. If the answer is yes, the inquiry ends there and the claim is preempted. *Id*. In making this determination, courts must look to the legal character of a claim; thus, it is not relevant whether "precisely the same set of facts" could be pursued under the CBA, but rather whether the right exists independent of the CBA. *See Livadas*, 512 U.S. at 123; *Lueck* 471 U.S. at 213; *Lingle*, 486 U.S. at 410. Second, if the right exists independently of a CBA, the court must consider "whether it is nevertheless 'substantially dependent on analysis of a collective-bargaining agreement.'" *Burnside*, 491 F.3d at 1059. "If such dependence exists, then the claim is preempted by [S]ection 301 if not, then the claim can proceed under state law." *Id*. at 1059-60. A right is "substantially dependent" on analyzing a CBA when the court must "interpret" terms of a CBA to

resolve the dispute; merely "referring" or "looking" to the CBA is insufficient to trigger preemption under step two of the test. *See Balcorta*, 208 F.3d at 1108. In other words, preemption will only be established when "there is an active dispute over 'the meaning of contract terms.'" *Schurke*, 898 F.3d at 921 (quoting *Livadas*, 512 U.S. at 124).

Here, defendant asserts that Plaintiff's overtime and meal period and rest break claims are completely preempted by Section 301 of the LMRA, and thus, removal was proper. *See* Notice of Removal (dkt. 1) at 7-8; *see also* Def.'s Opp. (dkt. 10). Before assessing each claim under the *Burnside* test, the court addresses Plaintiff's assertion that Defendant fails to show he was a member of the Union during the putative class period, and thus, covered by the CBA. *See* Pl.'s Mot. (dkt. 7) at 9-10. Plaintiff argues that the only proof that Defendant puts forward is a settlement agreement from June of 2018 between Defendant, Plaintiff, and the Union. *Id.* at 9. Plaintiff argues that the settlement agreement "does not show that [he] was a member of the Union . . . ." *Id.* However, Article 2 of the CBA provides that on or after thirty days of employment, or the date of execution of the agreement, "each full and part-time employee shall become and remain a member of the Union in good standing as a condition of employment . . . ." Farrer Decl. Ex. 1 (dkt. 1-1) at 10. Plaintiff worked for Defendant from October 16, 2017 to August 30, 2019. *See* Notice of Removal (dkt. 1) at 4, 20. Plaintiff was covered by the CBA by virtue of working for Defendant for more than 30 days, being a member of the Union was a condition of his employment, and Defendant employed him for nearly two years. Thus, Defendant met its burden of proof to establish Plaintiff's employment was subject to the CBA.

**Claim 1 – Unpaid Overtime**

Plaintiff argues that removal was improper because he brought claims for Defendant's violation of his non-negotiable rights conferred by California law, and did not refer to any provision of the CBA in his Complaint. *See* Pl.'s Mot. (dkt. 7) at 10. However, Plaintiff based his argument on cases decided prior to *Curtis*. Defendant argues *Curtis* is dispositive, and the overtime claim is preempted at step one of the *Burnside* test. *See* Def.'s Opp. (dkt. 10) at 10. In *Curtis*, the Ninth Circuit held that if a CBA satisfied the requirements of California Labor Code § 514, then a plaintiff's right to unpaid overtime exists solely because of the CBA, and thus, the

claim is preempted under the first step of the *Burnside* test. *Curtis*, 913 F.3d 1146.

California Labor Code § 510 defines overtime work and establishes the compensation due for overtime work. In relevant part, it provides that "[e]ight hours of labor constitutes a day's work. Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek . . . shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee . . . ." Cal. Lab. Code § 510(a). However, § 510(a)(2) exempts employment relationships from the state's overtime requirements where an employee is working pursuant to a CBA that meets the requirements of § 514. *See* Cal. Lab. Code § 510(a)(2). For the exemption to apply, a CBA must "expressly provide[] for the wages, hours of work, and working conditions of the employees," and "provide[] premium wage rates for all overtime hours worked and a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage." Cal. Lab. Code § 514. Therefore, if the parties' CBA meets the requirements of § 514, then a plaintiff cannot maintain a claim under § 510 because it would not apply to him and his unpaid overtime claim would be based solely on the terms of the CBA.

Defendant argues that the CBA at issue satisfies the requirements of § 514 for a "majority of the broadly-defined class," and thus, Plaintiff's unpaid overtime claim is preempted under step one of the *Burnside* test. *See* Def.'s Opp. (dkt. 10) at 11-13. Plaintiff counters that § 514 exemption does not apply because the CBA only satisfies the requirements of § 514 with respect to some, but not all, employees. *See* Pl.'s Reply (dkt. 11) at 4-6. Plaintiff points out that, by its own representation, approximately half of Defendant's employees, between 2017 and 2019, received regular hourly rates of less than 30 percent more than the state minimum wage. *Id*. at 4. Additionally, Plaintiff states that he never earned more than $12.97 per hour, a wage that failed to meet the required premium over the state minimum wage, and thus, the CBA failed to meet § 514's requirements, and his employment was not exempt from § 510. *See id*. at 5; Pl.'s Mot. (dkt. 7) at 13; Odabashian Decl. (dkt. 7-1) at 2.

This district has interpreted § 514 to require that a CBA must satisfy the section's requirements with respect to all employees covered by the CBA. *See Huffman v. Pacific Gateway Concessions LLC*, No. 19-cv-01791-PJH, 2019 WL 2650973 (N.D. Cal. June 21, 2019); *see also*

7

*Sarmiento v. Sealy*, Inc., No. 18-cv-01990-JST, 2019 WL 3059932 (N.D. Cal. July 12, 2019). In *Huffman*, the court explained that the language of the statute refers to plural "employees" when laying out the particular requirements in contrast to the singular "employee" in the first clause of the statute. *Huffman*, 2019 WL 2650973, at *5, 6 ("Section 514 concerns the merits of the agreement itself, not its treatment of any individual employee." (citing *Vranish v. Exxon Mobil Corp.*, 223 Cal. App. 4th 103, 109 (2014); *Curtis*, 913 F.3d at 1154)). There, the plaintiff was covered by a CBA meeting the requirements of § 514, but some employees covered by the CBA earned regular rates of pay of less than 30 percent more than the state's minimum wage. *Huffman*, 2019 WL 2650973, at *5. The defendant argued that the section only required the CBA to satisfy the requirements for the named plaintiff rather than all employees covered the CBA. *Id*. Based on the court's interpretation of the statute, it held that because the CBA failed to provide a regular hourly rate of pay of not less than 30 percent more than the state's minimum wage for at least some employees, § 514 exemption did not apply and the plaintiff could proceed with his unpaid overtime claim under § 510. *Id*. at 6.

Likewise, in *Sarmiento*, the court agreed with the *Huffman* court's interpretation of § 514 and added that the previous iteration of § 514 exemption, the 1999 Restoration Act, used the singular form of employee throughout. *Sarmiento*, 2019 WL 3059932, at *8. Thus, the California legislature chose "instead [to] adopt a plural construction" and to ignore that change "defies an ordinary understanding of language . . . ." *Id*. Additionally, the court stated that determining whether § 514 exemption applies on "a CBA-by-CBA basis, rather than employee-by-employee basis" made more sense because if the latter approach was followed, a particular employee who "worked in multiple positions" may be exempt from § 510 in one position which earns a qualifying premium pay rate, and then change positions within the same workplace to a lower paying position and fall outside the exemption. *Id*. at *9. The uncertainty that would inevitably follow such an application of § 514 would harm the parties' ability to "intelligibly bargain" and burden the parties' ability to resolve disputes because "employees would face the prospect of having to concurrently pursue – and employers of having to concurrently defend – claims in parallel forums based on the same conduct for overlapping periods." *Id*. The court ultimately held

that because "the CBA provide[d] for some rates below 130 percent of the state minimum wage, the agreement [did] not qualify for the collective bargaining exemption in section 514." *Id*. at *12.

Here, the parties dispute whether Plaintiff's unpaid overtime claim under § 510 is preempted by § 514 when less than all of the employees covered by the CBA earned regular hourly rates of pay that satisfied the 130 percent requirement. Article 7 of the CBA defines regular work hours and overtime work hours and the corresponding overtime premium pay rate. *See* Farrer Decl. Ex. 1 (dkt. 1-1) at 20-23. Appendix A sets forth the regular hourly wages by employee position. *Id*. at 34-35. Defendant's Human Resources ("HR") Generalist calculated the number of covered employees earning a regular hourly rate of not less than 30 percent more than California's minimum wage and found the following: 1) in 2019, 115 out of 251 hourly employees earned the requisite premium wage rate; 2) in 2018, 126 out of 249 hourly employees earned the requisite premium wage rate; and 3) in the last six months of 2017, 118 out of 217 hourly employees earned the requisite premium wage rate. *See* Farrer Decl. (dkt. 10-1) at 2-3.[1] Defendant argues that because "a substantial number of employee[s]" earned wages that satisfied § 514, those employees right to overtime arise solely out of the CBA. Def.'s Opp. (dkt. 10) at 12. As stated above, the CBA must meet § 514 requirements for all covered employees to qualify for exemption from § 510. Moreover, "questions about whether other putative class members' claims are preempted are not relevant to this court's jurisdiction over plaintiff's claims. The court looks to a plaintiff and his claims – not to his class allegations and putative class members – to assess jurisdiction." *Huffman*, 2019 WL 2563133, at *7. Plaintiff's highest hourly wage rate was $12.97 in 2019. *See* Pl.'s Mot. (dkt. 7) at 13; *see also* Odabashian Decl. (dkt. 7-1) at 2. In 2017, the minimum wage was $10.50. To meet § 514's requirements, Plaintiff would have been required to earn $13.65. The record shows, and the parties do not dispute, that Plaintiff's highest pay rate was $12.97, which would not have been sufficient in 2017, needless say in 2018 and 2019 when the minimum wage rates were higher, to meet § 514's exemption requirement for regular hourly

---

[1] California's minimum wage rates for employers with 26 or more employees were as follows: $10.50 per hour in 2017; $11.00 per hour in 2018; and $12.00 per hour in 2019. *See* https://www.dir.ca.gov/dlse/faq_minimumwage.htm. (Date accessed June 14, 2020.)

1   wages. Therefore, Plaintiff is covered by § 510 because the CBA fails to meet the requirements of
2   § 514 exemption for all covered employees including Plaintiff. Because Plaintiff's right to
3   overtime pay exists independently of the CBA, the claim for unpaid overtime is not preempted by
4   Section 301 of the LMRA.

5   As for step two of the *Burnside* test, Plaintiff argues that resolving his overtime claim will
6   not require interpretation of the CBA; the court needs only to refer to the CBA "to determine rates
7   of pay or other policies governing the putative class members' employment." Pl.'s Mot. (dkt. 7) at
8   12. Plaintiff further asserts that Defendant failed to identify any provision that requires
9   interpretation or to show how any terms may be open to interpretation. *Id*. In its Opposition,
10  Defendant focuses its argument on the meal period and rest break provisions. *See* Def.'s Opp. (dkt.
11  10) at 14-15. Likewise, in its Notice of Removal, Defendant fully neglects to identify any
12  overtime provision or term that may require interpretation. *See generally id*.; *see also* Notice of
13  Removal (dkt. 1).

14  At the second step of the analysis, "claims are only preempted to the extent there is an
15  active dispute over 'the meaning of contract terms.'" *Schurke*, 898 F.3d at 921-22 (quoting
16  *Livadas*, 512 U.S. at 125). "In the context of § 301 complete preemption, the term 'interpret' is
17  defined narrowly – it means something more than 'consider,' 'refer to,' or 'apply.'" *Huffman*,
18  2019 WL 2563133, at *4 (quoting *McCray v. Marriott Hotel Servs., Inc.*, 902 F.3d 1005, 1011
19  (9th Cir. 2018)). "Our circuit has repeatedly frowned upon defendants who have invoked
20  tangentially related CBA provisions in a strained and transparent effort to extinguish state-law
21  claims via preemption." *Burnside*, 491 F.3d at 1072.

22  Defendant bears the burden of proof to show that removal was proper. *See Hunter*, 582
23  F.3d at 1042; *Abrego Abrego,* 443 F.3d at 684. Because Defendant's Opposition is devoid of any
24  discussion about what overtime provisions or terms require interpretation, the court looks to
25  Defendant's Notice of Removal to determine if Defendant met its burden. The court finds it did
26  not. Throughout the Notice of Removal Defendant makes conclusory assertions that interpretation
27  of the CBA will be required for Plaintiff's unpaid overtime claim. *See* Notice of Removal (dkt. 1)
28  at 6-7 ("To analyze Plaintiff's claims, the Court will necessarily need to interpret the provisions of

the relevant CBA"; "Plaintiff (sic) claims cannot be adjudicated without interpretation of numerous CBA provisions that govern his employment"; "Plaintiff's state law claims on Defendant's alleged failure to pay overtime wages under . . . § 510 is preempted by section 301 of the LMRA because the claim requires the Court to analyze and interpret the CBA"s overtime provisions"). The court does not find that interpretation of the CBA's overtime provision or terms associated therewith will be required. At most the court may be required to refer to the CBA to determine the wage rate or classification of a particular employee. Therefore, Plaintiff's claim for unpaid overtime wages is not preempted by Section 301 of the LMRA.

**Claim 2 – Unpaid Meal Periods and Rest Breaks**

Plaintiff argues that removal was improper because his claim is based on his right to meal periods pursuant to California Labor Code § 512(a) and unpaid meal period premiums pursuant to § 226.7(c), both nonnegotiable rights under California state law and ineligible for preemption. *See* Pl.'s Mot. (dkt. 7) at 10-11.[2] Defendant asserts that Plaintiff's meal period claim is preempted under step one of the *Burnside* test because, like Plaintiff's overtime claim, an exemption applies. *See* Def.'s Opp. (dkt. 10) at 13-14. Defendant argues that the CBA satisfies the requirements of § 512(e), and thus, Plaintiff's rights under § 512(a) is extinguished and the meal period rights exists solely because of the CBA. *Id*. Plaintiff counters that the exemption does not apply because Plaintiff and putative class members are not within the categories of employees that are eligible for exemption under § 512(f). *See* Pl.'s Reply (dkt. 11) at 7-8. Plaintiff also argues that, even if he or class members were the types of employees listed under § 512(f), the employment relationship does not qualify for exemption because the CBA does not meet the requirement that covered employees earn a regular hourly wage of not less than 30 percent more than the state minimum wage. *Id*.

Labor Code § 512(a) provides, in relevant part, that an employer must provide a thirty-minute meal period for employees who work more than five hours per day, unless the total work

---

[2] The parties discuss the meal period claim at length, but barely mention the rest break claim which Defendant raised as grounds for preemption in its Notice of Removal. Thus, the court's analysis follows the parties' arguments and focuses on the meal period claim.

1    hours for the day will not exceed six hours, then the meal period may be waived by mutual
2    consent of employee and employer. Cal. Lab. Code § 512(a). If an employee works more than ten
3    hours in a day, then the employer must provide a second, thirty-minute meal period, but if the total
4    work hours for the day will not exceed twelve hours, then the requirement may be waived by
5    mutual consent. *Id*. Subdivision (e) provides that the meal period requirements do not apply to an
6    employment relationship if two conditions are satisfied: 1) the employee is covered by a valid
7    CBA; and 2) the valid CBA meets several requirements. *See* Cal. Lab. Code § 512(e). The CBA
8    must expressly provide for: 1) the wages, hours of work, and working conditions of employees; 2)
9    meal periods for those employees; 3) final and binding arbitration of disputes concerning
10   application of its meal period provisions; and 4) premium wage rates for all overtime hours
11   worked, and a regular hourly rate of pay of not less than 30 percent more than the state minimum
12   wage rate. *Id*. Subdivision (f) explains that "[s]ubdivision (e) applies to each of the following
13   employees:" construction occupations, commercial drivers, certain security officers, and
14   employees of electrical or gas corporations, or local publicly owned electric utilities. *See* Cal. Lab.
15   Code § 512(f). Thus, to qualify for exemption from § 512(a), the employee must: 1) be covered by
16   a valid CBA; 2) the CBA must include the enumerated provisions; and 3) the employee must be
17   employed as described in § 512(f).

18   As stated above, Plaintiff is covered by the CBA, but the CBA does not meet the statutory
19   requirements. The CBA requirements under § 512(e) are nearly identical to the requirements laid
20   out in § 514 for overtime claims. Specifically, both provisions require a CBA to expressly provide
21   "a regular hourly rate of pay for those employees of not less than 30 percent more than the state
22   minimum wage." *See* Cal. Lab. Code §§ 512(e)(2), 514. As discussed, Plaintiff, and some other
23   covered employees, did not earn a regular hourly rate of not less than 30 percent more than the
24   state minimum wage. Additionally, Plaintiff's (and putative class members') employment at a
25   grocery store is clearly outside of the exempted employment set forth in § 514(f). Only when a
26   CBA "meets the requirements of a statutory exemption" does a "particular labor right 'exist[]
27   solely as a result of the CBA'" as required for step one of the *Burnside* test. *See Marquez v. Toll
28   Glob. Forwarding*, 804 F. App'x 679, 681 (9th Cir. 2020). (finding the CBA met section 512(e)'s

exemption requirements and thus the plaintiff's "right to meal periods 'exist[ed] solely as a result of the [CBAs]'") (quoting *Curtis*, 913 F.3d at 1155); *see also Linebarger v. Graphic Packaging Int'l, LLC*, No. 20-cv-00309J-VSJDEX, 2020 WL 1934958, at *6 (C.D. Cal. Apr. 22, 2020) (plaintiff did not contest that the CBA met Section 512(e)'s exemption requirements). Because the CBA does not meet § 512(e) exemption requirements, Plaintiff's right to meal periods exists independently of the CBA, and preemption does not attach at the first step of the *Burnside* test.

As for step two of the *Burnside* test, Plaintiff argues that the court will not be required to interpret the CBA in resolving any of the claims presented. *See* Pl.'s Mot. (dkt. 7) at 12.[3] Defendant counters that the meal and rest period claims will require the court to interpret different language in the CBA and compare it to the corresponding IWC Wage order. *See* Def.'s Opp. (dkt. 10) at 14-15. Specifically, Defendant identifies two provisions in the CBA – Article 6 and the Time and Attendance Policy – that use "different language." *Id*. at 15. Also, because "Plaintiff claims that the IWC Wage Order also applies," the court will have to compare the language in the CBA with the language used in the Wage Order. *Id*. In his Reply, Plaintiff does not address whether the meal period provisions and the alleged "different language" will require interpretation. *See* Pl.'s Reply (dkt. 11) at 6-7. Instead, Plaintiff's argument focuses on the issue of interpretation with respect to overtime. *Id*.

"[N]either 'look[ing] to the CBA merely to discern that none of its terms is reasonably in dispute . . . , nor the simple need to refer to bargained-for wage rates in computing [a] penalty . . . is enough to warrant preemption." *Bradford v. Prof'l Tech. Sec. Servs. Inc. (Protech)*, No. 20-cv-02242-WHO, 2020 WL 2747767, at *5 (N.D. Cal. May 27, 2020) (quoting *Burnside*, 491 F.3d at 1060l; and *Livadas*, 512 U.S. at 124). "Similarly, 'alleging a hypothetical connection between the claim and the terms of the CBA is not enough to preempt the claim.'" *Id*. In the context of Section 301 preemption, the term "interpret" is narrowly defined. *See Balcorta*, 208 F.3d at 1108.

This district has dealt with the question of whether resolving a claim under § 512(a) substantially depends on the interpretation of CBA provisions. *See Bradford*, 2020 WL 2747767;

---

[3] Plaintiff does not explicitly state the meal period claim. *See* Pl.'s Mot. (dkt. 7) at 12.

*McGhee v. Tesoro Ref. & Mktg. Co. LLC*, No. 18-cv-05999-JSW, 2020 WL 1310528 (N.D. Cal. Feb. 21, 2020). In *Bradford*, the court found that the defendant "failed to show anything more than a 'hypothetical connection between the claim and the terms of the CBA.'" *Bradford*, 2020 WL 2747767, at *8 (quoting *McGhee*, 2020 WL 1310528, at *4). There, the defendant asserted that two portions of the CBA would require interpretation – "on-duty" meal periods and "emergency situations." *Id*. at *7-8. For the "on-duty" portion, the CBA provided that when the employee was not relieved of all duty during their break, the meal period would be considered "on-duty" and that "on-duty" meal periods counted as time worked to be compensated at the employee's regular wage rate. *Id*. at *7. The court found that a determination of what constitutes a meal period was "'a question of state law, not contract interpretation.'" *Id*. at *8 (quoting *Atuatasi v. Securitas Sec. Servs. USA, Inc.*, No. 18-cv-2786-VAPPLAX, 2018 WL 2748259, at *5 (C.D. Cal. June 6, 2018) (finding that the CBA terms for meal breaks were unambiguous and there was "no need to interpret the CBA to determine when to take a break, how long a break would be, and how the break would be treated in terms of compensation."). Regarding the "emergency situation" portion, the defendant argued that "emergency situation" and "reasonable effort" were undefined terms, and thus required analysis and determination of "what constitute[d] an 'emergency situation' and 'reasonable effort,' and how this provision modifie[d] other meal period requirements under . . . the CBA and the Labor Code." *Id*. The court found that the defendant's arguments were similar to those in *McGhee*. *Id*.

In *McGhee*, the defendant asserted that a CBA provision for "off-duty" meal periods required interpretation. *McGhee*, 2020 WL 1310528, at *4. The CBA provided for "off-duty" meal periods where an employee was "free to leave the premises" unless "the needs of the business require otherwise." *Id*. Specifically, the defendant argued that the court would have to "interpret the meaning of 'off-duty'" and the exceptions to the rule for "off-duty" meal periods to understand what restrictions were placed on employees during meal periods. *Id*. In rejecting the argument, the court stated the defendant's "policies [did] not appear to be complicated or necessarily disputed." *Id*. The court found that it would need only "look" at the CBA, and the court's analysis "remain[ed] on the [defendant's] actions, not the CBA's authorizations." *Id*. Likewise, in

*Bradford*, the court found that the defendant's argument failed because "the meal period allegation here would only require [the court] to 'look' at the 'emergency situation' exception provided in the CBA. [The defendant's] hypothetical connection between the term 'emergency situation' and Plaintiff's claim [was] insufficient." *Bradford*, 2020 WL 2747767, at *8.

Additionally, in *McGhee*, the court stated that the defendant failed to show that the CBA's terms were "actively disputed." *McGhee*, 2020 WL 1310528, at *4. The parties appeared to agree that "under the CBAs, on-premise meal periods were paid, but all other meal breaks were unpaid." *Id*. The court stated that whether the practice of compensating only on-premise meal periods constituted "'discouragement' of duty-free meal periods require[d] the Court to 'consider' the CBA provisions, not to interpret them." *Id*. On the other hand, the Ninth Circuit recently held that a plaintiff's rest break claims were preempted under step two of the *Burnside* test because the CBA terms were in dispute. *See Marquez*, 804 F. App'x at 681. In *Marquez*, the parties disputed the meaning of the terms "permit," "load," "unattended," and "leave a load, and the court held that "[d]etermining the meaning of industry terms is a form of interpretation." *Id*. (citing *Kobold v. Good Samaritan Reg'l Med. Ctr.,* 832 F.3d 1024 (9th Cir. 2016)).

In this case, Defendant fails to establish that there is an active dispute about the meaning of the terms in the meal period and rest break provisions. Instead, Defendant states only that because Article 6 and the Time and Attendance Policy use "different language" the court will have to interpret the different words. This falls short of the requisite showing to find interpretation is necessary to resolve the claims. In *Bradford* and *McGhee*, the defendants identified specific terms and made specific allegations about what issues those terms posed for resolving the state law claims, and, even so, those courts found that the claims were not preempted. Here, Defendant does not point to any specific terms that are undefined, disputed, ambiguous, or otherwise require some interpretation, but vaguely states that different language is used. Defendant also fails to explain why the "different language" poses an issue for the resolution of Plaintiff's state law claims. Defendant has "failed to show anything more than a 'hypothetical connection between the claim and the terms of the CBA.'" *McGhee*, 2020 WL 1310528, at *4 (quoting *Cramer v. Consol. Freightways, Inc.*, 255 F.3d 683, 691 (9th Cir. 2001), *as amended* (Aug. 27, 2001)).

The court also looks to Defendant's Notice of Removal for any basis for preemption of the state law meal period and rest break claims. Defendant argues that resolution of the statutory meal period and rest break claims will substantially depend on interpretation of the CBA because the court will have to analyze CBA provisions compared to "the past practices between Defendant and the Union." Notice of Removal (dkt. 1) at 8. Specifically, Defendant asserts that the court "must interpret the parties' practices regarding the extent to which they agree that Plaintiff may take meal periods and rest breaks in accordance with its terms." *Id*. Defendant relies on the Supreme Court's decision in *Consol. Rail Corp. v. Ry. Labor Executives' Ass'n*, 491 U.S. 299 (1989), in support of its "past practices" argument. However, that case is inapposite. There, no CBA was in the record, the parties did not rely on any express provision of a CBA, and thus, the plaintiff's claim "rest[ed] solely upon implied contractual terms, as interpreted in light of past practice." *Id*. at 311-12. Here, there is a CBA in the record, and Defendant relies on express provisions of the CBA.

Additionally, the CBA at issue provides that the parties may use "practices adopted or continued following the effective date of the [CBA] as an aid in interpreting ambiguous provisions of the [CBA] or written side-letters." *See* Farrer Decl. Ex. 1 (dkt. 1-1) at 38. It is evident, in the case law and the CBA itself, that past practices were not intended to be used to create ambiguity, but rather, past practices can be used as a tool when a term in the CBA is ambiguous. Defendant has neither asserted nor established that a term in the meal period or rest break provisions are ambiguous, and thus, the argument fails. Moreover, Defendant's "past practices" argument is much like the defendant's argument in *McGhee.* There, the court rejected the defendant's argument that whether the practice of paying employees for only on-premise meal periods was evidence of discouraging off-duty meal periods; the court stated that it would only need to "consider," not interpret, the CBA. *McGhee*, 2020 WL 1310528, at *4. The past practices between Defendant and its employees in taking meal periods or rest breaks may require the court to "consider" past practices, but not interpret, the CBA in order to resolve Plaintiff's state law claims. Therefore, the state law claims for meal periods and rest breaks are not preempted by Section 301 of the LMRA.

**The CBA's Grievance and Arbitration Provision**

Finally, Plaintiff argues that the arbitration provision of the CBA is not a basis for preemption because a CBA that waives of an employee's right to bring statutory claims in a judicial forum must be "clear and unmistakable." *See* Pl.'s Mot. (dkt. 7) at 14-15. Defendant does not address this issue in its Opposition, but in its Notice of Removal, Defendant states that because "all of Plaintiff's claims are, in essence, alleged violations of the relevant CBA the court will necessarily have to interpret the grievance and arbitration provisions to analyze" the claims. Notice of Removal (dkt. 1) at 8. Specifically, Defendant asserts the court will have to "determine whether Plaintiff was first required to exhaust the grievance procedures, whether he did in fact exhaust those procedures, and whether he agreed to arbitrate all or some of his claims . . . ." *Id*. In his Reply, Plaintiff adds that Defendant's inclusion of a prior settlement between the Union, on Plaintiff's behalf, and Defendant is insufficient to establish that Plaintiff's state law claims are subject to the grievance and arbitration provisions of the CBA. *See* Pl.'s Reply (dkt. 11) at 8-9.

The Supreme Court has held that for a waiver of an employee's right to present grievances based on statutory rights in a judicial forum must be "clear and unmistakable." *Wright v. Universal Mar. Serv. Corp.*, 525 U.S. 70, 79-80 (1998) (citing *Metropolitan Edison Co. v. NLRB*, 460 U.S. 693 (1983)). "[W]e will not infer from a general contractual provision that the parties intended to waive a statutorily protected right unless the undertaking is 'explicitly stated.'" *Metropolitan Edison Co.*, 460 U.S. at 708. In *Wright*, the CBA provided that "matters under dispute" must be arbitrated, but it did not refer to any particular statute or incorporate a statute by reference. 525 U.S. at 80. Additionally, the Court found that a provision that the CBA did not cover anything that was not contained within the CBA and a clause stating that the CBA was not to contradict any federal or state law did not rise to a "clear and unmistakable waiver." *Id*. at 81. Applying *Wright*, the Ninth Circuit rejected an argument that the rule only applied to statutory discrimination claims, not statutory labor claims. *Wawock v. CSI Elec. Contractors, Inc.*, 649 F. App'x 556 (9th Cir. 2016). The court explained that "every court to have discussed the issue has recognized *Wright* 's application to other statutory claims." *Id*. at 558 (citing *Vasserman v. Henry Mayo Newhall Memorial Hosp.,* 65 F. Supp. 3d 932, 964-65 (C.D. Cal. 2014) (California wage

17

and hour law claims); *Martinez v. J. Fletcher Creamer & Son, Inc.,* No. 10-cv-0968-PSG, 2010 WL 3359372, \*3 (C.D. Cal. Aug. 13, 2010) (FLSA and California statutory claims)).

First, the court reiterates that Defendant bears the burden to establish that removal jurisdiction exists. *See Hunter*, 582 F.3d at 1042; *Abrego Abrego,* 443 F.3d at 684. Even though the court finds Defendant failed to meet its burden, the court will discuss the CBA in light of the above case law. Article 12 of the CBA provides the grievance and arbitration procedures, and it states in relevant part: "[a] grievance is defined as any dispute between the Employer and the Union or between the Employer and any employee as to the interpretation or application of the any of the express provisions of this Agreement." *See* Farrer Decl. Ex. 1 (dkt. 10-1) at 28. There is no mention of any California labor code provision. Likewise, an inspection of the CBA's Article 6 governing hours of work, workweek, and breaks and Article 7 governing wages reveals no reference to the California Labor Code. *See id*. at 19-22. In the provision titled Time and Attendance Policy, there is a reference to California Labor Code Section 226.7. *Id*. at 41. However, the reference is not made with regard to the grievance or arbitration procedures. Thus, one single reference to a statute in the CBA does not amount to a "clear and unmistakable" waiver of Plaintiff's or any covered employees' right to present statutory claims in a judicial forum. Thus, because the court has found that the claims arise under state law, resolution of the claims does not require interpretation of the terms of the CBA, and the CBA does not clearly and unmistakably waive the covered employees' right to present statutory claims in court, Plaintiff's claims are not preempted by virtue of the grievance and arbitration provision of the CBA.

## CONCLUSION

For the reasons stated above, Plaintiff's claims for unpaid overtime, meal periods, and rest breaks are not preempted, and the grievance and arbitration provision also fails to establish preemption. Because Defendant's removal was based solely on these arguments, Plaintiff's Motion for Remand (dkt. 7) is **GRANTED**. This action is hereby **REMANDED** to the Humboldt County Superior Court.

**IT IS SO ORDERED.**

Dated:

ROBERT M. ILLMAN
United States Magistrate Judge

19